Kyle McLean (SBN 6344126)
Email : kmclean@sirillp.com
Lisa R. Considine (*Pro Hac Vice to be filed*)
Email: lconsidine@sirillp.com
Oren Faircloth (*Pro Hac Vice to be filed*)
Email: ofaircloth@sirillp.com
700 S. Flower St., Ste. 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE R. PRONOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKYONE FEDERAL CREDIT UNION<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Jasmine R. Pronos, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant SkyOne Federal Credit Union ("SkyOne" or "Defendant"), based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. When dealing with consumer contracts, normally presented on a take-it or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair frequently turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have a practical opportunity to avoid the fee.

2. Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in their account to cover the check when it is deposited. If a customer breaks this understanding and writes a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to the customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

3. On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the depositor a fee for returning the check.

4. By contrast, banks and credit unions maintain highly sophisticated systems for clearing checks and know, or should know, when the person that wrote the check does not have sufficient funds to cover the check or has access to the reasons that the check may not otherwise be valid.

5. Nevertheless, despite having these capabilities, SkyOne routinely charges and collects what it refers to as "Returned Items Unpaid" fees. By charging these Returned Items Unpaid fees, SkyOne unfairly targeted its members with financial penalties for faulty checks the members had no hand in issuing. Plaintiff was shocked when she was charged a fee because she did nothing wrong yet was

- 2 -
CLASS ACTION COMPLAINT

penalized by SkyOne. There was nothing Plaintiff could do to avoid — or even anticipate — a Returned Items Unpaid fee assessed by SkyOne at the time the deposit was returned.

6. By charging its members significant fees in situations where the customer did nothing wrong and could not have avoided the fee through reasonable diligence, SkyOne acted in a manner that is unfair, oppressive, and against public policy.

7. Recent guidance from the Consumer Financial Protection Bureau ("CFPB") has reaffirmed the unlawful nature of SkyOne's Returned Items Unpaid fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice for an institution to have a blanket policy of charging Returned Items Unpaid fees anytime that a check is returned unpaid, irrespective of the circumstances or patterns of behavior on the account; the CFPB noted that these fees cause substantial monetary injury for each returned item, which consumers likely cannot reasonably avoid because they lack information about and control over whether a check will clear.[1]

8. California, among other States, has recognized the unfair nature of these fees and has recently amended the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17200, *et seq.*, to expressly prohibit "junk fees" where a business reveals unavoidable fees later in the buying process. As California Attorney General Rob Bonta noted in a press release: "These deceptive fees prevent us from knowing how much we will be charged at the outset. They are bad for consumers … [and] cost Americans tens of billions of dollars each year."[2]

9. Accordingly, Plaintiff, on behalf of herself and the Class and Subclass

---

[1] Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at: https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06- unfair-returned-deposited-item-fee-assessment-practices/ (last accessed April 14, 2024).

[2] Attorney General Bonta's Sponsored Bill to Ban Hidden Fees in California Signed into Law (Oct. 7, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta%E2%80%99s-sponsored-bill-ban-hidden-fees-california-signed-law (last accessed April 17, 2024).

(defined below), now seeks to hold SkyOne accountable for its unlawful and unfair policy, and seeks damages, restitution, and injunctive relief, as set forth below.

## PARTIES

10. Plaintiff Jasmine Pronos is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of Cook and held a SkyOne deposit account during the applicable limitations period. Ms. Pronos opened her SkyOne account in Illinois, and, therefore, her account is located there.

11. Defendant SkyOne is a credit union headquartered in Hawthorne, California. As of December 31, 2022, SkyOne had over 50,000 members and had over $880 million in assets.[3] SkyOne has several branches in California and offices in New York, Illinois, and Washington.

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

13. This Court has jurisdiction over Defendant because it operates in this District, is headquartered in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

**I. RETURNED ITEMS UNPAID FEES**

15. Returned Items Unpaid Fees are levied when a check is returned because it cannot be processed against the originator's account. In other words, when Person

---

[3] *See* 2022 Annual Report for SkyOne at 4. Available at: https://www.skyone.org/wp-content/uploads/2023/04/2022AnnualReport_FINAL.pdf (last accessed April 4, 2024).

A writes a check to Person B and the check bounces or is returned unpaid, the bank charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear. There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor. The reason could be insufficient funds, a stop payment order issued by the check writer, a closed or foreign account, or even a minor discrepancy on the check itself. Even though the depositor has no control over the check, the Returned Item Unpaid Fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check.

16.  Returned Items Unpaid Fees are widespread within the banking industry, with most major banks and financial institutions levying them as part of their standard fee structure. The ubiquitous and unavoidable nature of Returned Items Unpaid Fees has raised concerns about the fairness and predatory nature of imposing penalties on the depositor. In fact, these fees are nothing more than veiled revenue-generating tools that penalize innocent depositors for the actions of others.

17.  Recognizing the potential for abuse, the CFPB issued Bulletin 2022-06 on November 7, 2022 (the "Bulletin"). The Bulletin, entitled *Unfair Returned Deposited Item Fee Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Returned Items Unpaid fees, particularly instances where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

18.  The CFPB deemed these fees unfair under the Consumer Financial Protection Act ("CFPA"). It took issue with financial institutions, like SkyOne, that charge consumers Returned Items Unpaid Fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A)

"causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."

Blanket policies of charging Returned Items Unpaid fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.

Fees charged for Returned Items Unpaid cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Items Unpaid fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Items Unpaid fees for returned checks impose concrete monetary harm on a large number of customers**.

In many of the instances in which Returned Items Unpaid fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Items Unpaid fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

87 R 66940, 66941 (emphases added).[4]

19. The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and ***there is no separate benefit to consumers from having a deposited check returned, as opposed to paid***." *Id*. The CFPB further found that these fees are ***not*** "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id*. Evidently, the CFPB has signaled its intention to impose stricter oversight and raise legal challenges against these unfair and predatory practices.

## II. SKYONE IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED DEPOSITS, REGARDLESS OF CAUSE

20. SkyOne offers a diverse range of deposit accounts, including a range of different checking and savings options, to its members like Plaintiff and the putative Class and Subclass members.

21. Upon opening a deposit account with SkyOne, each member receives a "General Disclosure Information About All of Our Accounts and Services" document ("Account Agreement").[5] The Account Agreement forms the contract between SkyOne and its members and provides the terms and conditions governing each deposit account held with SkyOne. *Id*.

22. The Account Agreement contains explanations of the overdraft and nonsufficient fund fees but there is no explanation as to Returned Items Unpaid fees. The Account Agreement states that the information on overdraft and nonsufficient fund fees "is being provided to help you [the member] understand what happens if

---

[4] The Bulletin is available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed April 14, 2024).
[5] *See* SkyOne Account Agreement, effective August 1, 2022, at 3, attached hereto as Exhibit A ("**Account Agreement**").

1  your account is overdrawn. Understanding the[se] concepts . . . is important and can
2  help you avoid being assessed fees or charges." *Id.* at 5.  There is no mention of
3  SkyOne's Returned Items Unpaid fees anywhere in the Account Agreement. The
4  Account Agreement's inexplicable omission of any mention of Returned Items
5  Unpaid fees stands in stark contrast to the clear explanations provided for other fees.

6  23. While depositing a check, members naturally anticipate receiving the
7  funds. However, factors entirely outside their control can lead to a deposit being
8  returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-
9  payment order issued by the originator, or even processing errors. These
10 unpredictable circumstances can expose the depositor to unfair and unavoidable
11 financial repercussions.

12 24. Members attempting to deposit funds, such as Plaintiff, lacked any
13 control over whether the deposit would be returned and had no way of protecting
14 themselves against the possibility of the deposit being returned and being charged a
15 fee. Depositors could not realistically verify with the originator's institution whether
16 there were sufficient funds in the issuer's account before depositing an item.

17 25. Conversely, upon information and belief, SkyOne maintains
18 sophisticated systems to make sure that checks submitted for deposit are valid for
19 processing and that the person or business who wrote the check has sufficient money
20 to pay it.  Thus, SkyOne has the capability for determining the reason that a check is
21 not valid and the person or business at fault for any invalid check.

22 26.  SkyOne's blanket policy of charging Returned Items Unpaid fees on all
23  returned deposits, regardless of the origin of the check or the cause of its return, is
24 unfair because it penalizes them for circumstances outside of their control.

25 **III.   SKYONE CHARGED PLAINTIFF RETURN RETURNED
26          ITEMS UNPAID FEES**

27 27. Jasmine Pronos held a SkyOne deposit account during the applicable
28 limitations period.

28. Ms. Pronos' Account was located in the State of Illinois at the time she opened the account and remains so to this day.

29. On or around August 7, 2023, Ms. Pronos attempted to deposit a check into her SkyOne account.

30. At the time she attempted to deposit the checks into her SkyOne account, Ms. Pronos had no reason to believe that the check would be returned unpaid.

31. Several days later, on August 10, 2023, to Ms. Pronos' surprise and by no fault of her own, the check she deposited was returned unpaid. SkyOne charged Ms. Pronos a Returned Items Unpaid fee of $25.00. The Returned Items Unpaid fee was deducted from the balance of Ms. Pronos' account.

32. Because the $25 Returned Items Unpaid fee which SkyOne charged Ms. Pronos was assessed pursuant to SkyOne's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Returned Items Unpaid fee was unfair and unlawful.

## CLASS DEFINITION AND ALLEGATIONS

33. Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and on behalf of all other persons similarly situated.

34. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Nationwide Class** (the "**Class**")
All individuals who, during the applicable statute of limitations, had or have accounts with SkyOne and were charged a Returned Items Unpaid fee by SkyOne.

**Illinois State Subclass** (the "**Illinois Subclass**")
All individuals who, during the applicable statute of limitations, had or have accounts with SkyOne located in Illinois and were charged a Returned Items Unpaid fee by SkyOne.

35. Excluded from the Class and Subclass are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

36. Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

37. The proposed Class and Subclass meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

38. **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Subclass are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class and Subclass contains thousands of accountholders who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

39. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant's assessment of Returned Items Unpaid fees within the applicable statute of limitations was unfair, deceptive, or misleading;

   b. Whether Defendant breached its Implied Covenant of Good Faith and Fair Dealing by assessing Returned Items Unpaid fees on transactions in cases where the accountholder had no reason to believe the deposit would be returned unpaid;

   c. Whether Defendant was unjustly enriched as a result of charging Plaintiff and the Class and Subclass the "Returned Items Unpaid fees";

   d. Whether Plaintiff and the Class suffered damages as a result of Defendant's assessment of Returned Items Unpaid fees;

   e. Whether Defendant's conduct, as alleged herein, constitutes a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, codified at 815 Ill. Comp. Stat. 505/1, *et seq*. (the "ICFA") (on behalf of the Illinois Subclass);

   f. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

      g. Whether Plaintiff and the Class and Subclass are entitled to declaratory and injunctive relief and the nature of that relief.

40. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class and Subclass, because, *inter alia*, all Class and Subclass members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class and Subclass members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class and Subclass. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclass.

41. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass. Plaintiff and members of the Class and Subclass each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Returned Items Unpaid fees. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class or Subclass, and Defendant has no defenses unique to Plaintiff.

42. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or the Subclass, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all

parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

43. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Subclass, and other equitable relief on grounds generally applicable to the entire Class and Subclass. Unless a Class and Subclass are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class and Subclass will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from the violations alleged, and the members of the Class and Subclass and the general public may continue to be unfairly treated.

44. Defendant has acted and refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class and Subclass as a whole.

## COUNT I
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(On behalf of Plaintiff and the Class)**

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1- 44 as if fully set forth herein.

46. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

47. A covenant of good faith and fair dealing is implied in Plaintiff's and the Class members' Account Agreements with Defendant. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit — not merely the letter — of the bargain. Thus, the parties to a contract are mutually

obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

48. The material terms of the Account Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff and the Class members' rights and benefits under the contract.

49. Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

50. As alleged herein, Defendant breached the implied covenant of good faith and fair dealing by systematically charging Plaintiff and the Class members' Returned Items Unpaid fees for attempting to deposit checks that could not be deposited irrespective of the facts and circumstances surrounding the accountholder's attempt to deposit the check into their account.

51. Defendant's actions to maximize its revenue from Returned Items Unpaid fees impedes the right of Plaintiff and other members of the Class to receive benefits that they reasonably expected to receive under the contract, as the money entrusted to Defendant for their banking activities was reduced.

52. On information and belief, Defendant's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Defendant's revenue from Returned Items Unpaid fees at the expense of their customers, in contravention of Plaintiff's and the Class members' reasonable expectations.

53. Plaintiff and members of the Class have sustained damages as a result of Defendant's conduct as alleged herein.

54. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## COUNT II
## UNJUST ENRICHMENT
**(On behalf of Plaintiff and the Class)**
*(Plead in the alternative to Count I)*

55. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1–54 as if fully set forth herein.

56. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

57. Plaintiff and the members of the Class conferred a benefit on Defendant, which Defendant knew about, when they enrolled in Defendant's deposit accounts and were charged Returned Items Unpaid fees.

58. Plaintiff and members of the Class were, and many continue to be, members of Defendant with deposit accounts. They reasonably believed that SkyOne would not charge them unreasonable fees beyond their control. Plaintiff and members of the Class suffered financial losses when they were charged Returned Items Unpaid fees in the form of funds deducted from their accounts.

59. By charging Returned Items Unpaid fees, Defendant unjustly enriched itself by taking a benefit, in the form of a $25 charge each time an item was returned, from each of their customers' accounts, regardless of their own action, without providing any additional service or value to their customers, including Plaintiff and members of the Class. Defendant has accepted and retained these benefits even though it failed to provide any service or product to its customers and failed to provide any manner to avoid these fees, making Defendant's retention of them unjust.

60. By its wrongful acts and omission described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiff and the members of the Class.

61. Plaintiff's and the Class's detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

62. Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative Class members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

63. Plaintiff and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

64. Plaintiff and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

65. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

### COUNT III
### VIOLATION OF ILLINOIS' CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFA")
### 815 Ill. Comp. Stat. ("ILCS") 505/1, *et seq*.
### (Plaintiff Pronos on behalf of herself and the Illinois Subclass)

66. Plaintiff Pronos repeats and realleges each and every allegation contained in paragraphs 1–65 as if fully set forth herein.

67. Plaintiff Pronos brings this claim individually and on behalf of the members of the Illinois Subclass against Defendant.

68. Plaintiff Pronos maintains a SkyOne account located in Illinois.

69. Plaintiff Pronos and the Illinois Subclass members are persons within the context of the ICFA, 815 ILCS 505/1(c), and Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

70. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

71. Plaintiff Pronos and the proposed Illinois Subclass are "consumers" within the meaning of the ICFA, 815 ILCS 505/1(e).

72. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2. This includes conduct that "creates a likelihood of confusion or misunderstanding" irrespective of whether the person has been in fact misled, deceived, or damaged thereby. 815 ILCS 505/2; 815 ILCS 510/2(a)(12).

73. The ICFA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 666 (7th Cir. 2008) (*citing* the Illinois Supreme Court's holding in *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (Ill. 2022)).

74. The ICFA provides a broad private right of action for "[a]ny person who suffers actual damage as a result of a violation of this Act" and enables such person to bring an action against any business entity that violates the statute. 815 ILCS 505/10a(a); 815 ILCS 505/1(c). In addition, the ICFA provides for injunctive relief where appropriate as well as reasonable attorney's fees and costs. 815 ILCS 505/10a(c).

75. Defendant charged Returned Items Unpaid fees in the regular course of

its business and in the course of conducting trade and commerce and charged Plaintiff Pronos a Returned Items Unpaid fee in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Plaintiff Pronos and the members of the Illinois Subclass members.

76. Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

77. The CFPB — through Bulletin 2022-06 — has determined that Returned Items Unpaid fees, such as those charged by SkyOne, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

78. Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Returned Items Unpaid fees is deceptive and unfair and constitutes a violation of the ICFA.

79. Plaintiff Pronos and all Illinois Subclass members sustained actual damages as a result of Defendant's unfair practice. The actual damages sustained by Plaintiff Pronos and all Illinois Subclass members were caused by Defendant's unfair practice of charging Returned Items Unpaid fees. In other words, had Defendant not engaged in the unfair practice of charging Returned Items Unpaid fees, Plaintiff Pronos and the Illinois Subclass members would not have sustained damages. The actual damage is measured by the amount of the Returned Items Unpaid fees charged by Defendant.

80. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes an unfair practice committed in the course of trade and commerce, intended to be relied upon by accountholders, that proximately caused actual damages

to Plaintiff Pronos and the Illinois Subclass, in violation of 815 ILCS 505/2, and Defendant is liable to Plaintiff Pronos and the Illinois Subclass for the damages they have sustained as a result of Defendant's actions.

81. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Subclass are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorneys' fees under 815 ILCS 505/10a.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that the Court enter judgment against Defendant in the form of an Order:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class Members;

B. Naming Plaintiff Pronos as the representative of the Illinois Subclass;

C. Declaring that Defendant's conduct violated the laws referenced herein;

D. Finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

E. Awarding actual, consequential, punitive, statutory, and treble damages as applicable;

F. Awarding pre-judgment and post-judgment interest on all amounts awarded;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For disgorgement and restitution to Plaintiff and the Class and/or Subclass members of all monies received or collected from Plaintiff and the Class and/or Subclass members and all other forms of equitable relief;

I.   Awarding Plaintiff and the Class and Subclass reasonable attorneys' fees and expenses and costs of suit;

J.   Awarding damages in an amount to be determined at trial; and

K.   For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

DATED:  April 18, 2024          Respectfully submitted,

By:   /s/Kyle D. McLean
Kyle McLean (SBN 330580)
kmclean@sirillp.com
Lisa R. Considine (*Pro Hac Vice to be filed*)
lconsidine@sirillp.com
Oren Faircloth (*Pro Hac Vice to be filed*)
ofaircloth@sirillp.com
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Main: 213-376-3739

*Attorneys for Plaintiff and the Putative Class*